UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

STATION CASINOS, INCORPORATED, a Nevada Corporation,

      Plaintiff,

v.

SHINICHI FUJISAKI, an individual,

      Defendant.

02:06-CV-01486-LRH-PAL

ORDER

      Presently before the court is plaintiff Station Casinos, Inc.'s ("Station Casinos") *ex parte* Application for Temporary Restraining Order (# 3[1]) and Motion for Preliminary Injunction (#4).

**I. Factual Background**

      Station Casinos is a Nevada corporation that owns and operates, through its wholly owned subsidiaries, a number of hotel casinos in southern Nevada. Defendant Shinichi Fujisaki ("Fujisaki") is an individual who resides in Shiga, Japan.[2] On or about January 20, 2006, Fujisaki

---

[1] Refers to the court's docket number.

[2] The court notes that it is unlikely personal jurisdiction exists over Fujisaki. Station Casinos, in its complaint, alleges that this court has personal jurisdiction over Fujisaki due to his operation of web sites that are accessible to residents of Nevada, the fact that the web sites are online casinos, and the fact that Station Casinos was injured in Nevada. In *Pebble Beach Co. v. Caddy*, the Ninth Circuit stated that "an internet domain name and passive website . . . alone are not enough to subject a party

1  registered three internet domain names with Melbourne It, Ltd. d/b/a Internet Names Worldwide, a
2  registrar for domain names. The three domain names registered by Fujisaki are "cool-
3  casinostation.com," "hot-casinostation.com," and "newcasino-station.com." Fujisaki linked the
4  domain names to web sites that offer direct links to online casinos.
5      On November 20, 2006, Plaintiffs filed this action alleging cybersquatting, trademark
6  infringement, unfair competition, deceptive trade practices, and intentional interference with
7  prospective economic advantage. On that same date, Plaintiffs filed the present motion seeking an
8  *ex parte* temporary restraining order requiring Fujisaki to "immediately cease and desist all use of
9  Plaintiff's names, trademarks and domain names and requiring the domain name registrar to
10 transfer the . . . domain names . . . to Plaintiff and place such Infringing Domain Names on hold."
11 (Application for Temporary Restraining Order (# 3) at 1.)

**II. Legal Standard**

13     The Ninth Circuit uses two alternative tests to determine whether a temporary restraining
14 order should issue. According to the "traditional test," the equitable criteria for granting
15 preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility
16 of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships
17 favoring the plaintiffs; and (4) advancement of the public interest. *Textile Unlimited, Inc. v.*
18 *A..BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles Mem'l Coliseum*
19 *Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir.1980)). In the alternative, the
20 Ninth Circuit uses a "sliding scale" or balancing test where injunctive relief is available to a party
21 who demonstrates either: (1) a combination of probable success on the merits and the possibility of
22 irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its

---

to jurisdiction." 453 F.3d 1151, 1158 (9th Cir. 2006). However, because personal jurisdiction can be waived, the court will not address the issue at this time. *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1076 (9th Cir. 2006) (citing *Smith v. Idaho*, 392 F.3d 350, 355 n.3 (9th Cir. 2004)).

favor. *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir.2000)).

### III.  Discussion

For purposes of the instant motion, Station Casinos argues that it is likely to succeed on the merits of its anti-cybersquatting claim, it's trademark infringement and unfair competition claims, and its common law trademark infringement claim. The court will discuss each claim below.

#### A.  The Anti-Cybersquatting Protection Act

The Anti-Cybersquatting Protection Act ("ACPA") provides, in relevant part, as follows:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that –
>    (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>    (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark. . . .

15 U.S.C. § 1125(d)(1)(A). Therefore, a violation of section 1125(d)(1)(A) requires both a bad faith intent along with registering, trafficking in, or using a domain name that is identical or confusingly similar to a distinctive mark or is identical or confusingly similar to or dilutive of a famous mark.

In the case *sub judice*, the court finds that Station Casinos has failed to show a likelihood of success on its ACPA claim because it has failed to show that Fujisaki acted with a bad faith intent. The ACPA lists several factors a court may consider in determining whether a person has a bad faith intent. These factors include, but are not limited to, the following:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

3

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B). At this stage in the proceedings, Station Casinos has failed to make any showing regarding the possible intent of Fujisaki. Other than Station Casinos' assertion that it is "clear" that it will be able to demonstrate bad faith intent, Station Casinos has not made any citation to evidence of bad faith. Particularly because Fujisaki's web sites are written entirely in Japanese characters, the court will not infer bad faith on his part absent some evidence that would support a finding of bad faith. For these reasons, the court finds that Station Casinos has failed to show a likelihood of success on the merits.

**B. Trademark Infringement and Unfair Competition**

The test for trademark infringement and unfair competition claims is whether the alleged infringer's use of a mark is likely to cause confusion. *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)). In determining whether there is a likelihood of confusion, the Ninth Circuit has looked to the following eight non-exclusive factors: strength of the mark, proximity of the goods, similarity

4

of the marks, evidence of actual confusion, marketing channels used, types of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citing *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 722 (9th Cir. 1958)). However, this list of factors is not a "score-card" and the relative importance of each factor is case specific. *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

Station Casinos argues that it has shown a likelihood of confusion because the marks are similar, the goods or services are related, and both simultaneous use of the internet as a marketing channel. The court has carefully reviewed Station Casinos points and authorities along with the relevant law and finds that Station Casinos has failed to show a likelihood of success on the merits at this time.

A likelihood of confusion becomes more likely as the similarity between two marks becomes greater. *Entrepreneur Media, Inc.*, 279 F.3d at 1144 (citing *GoTo.com, Inc.*, 202 F.3d at 1206). The Ninth Circuit has developed "three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and, 3) Similarities weigh more heavily than differences." *Id*.

Here, although the allegedly infringing domain names use the words "station" and "casino," the court cannot say, at this point in the proceedings, that Fujisaki's use of the domain names at issue is sufficiently similar to Station Casinos' use of its trademark so as to cause a likelihood of confusion. Fujisaki's web sites do not identify themselves as associated with Station Casinos. (Application for Temporary Restraining Order (# 3), Exs. 5-7.) Furthermore, Fujisaki's web sites do not themselves offer gambling services. *Id*. Rather, the web sites appear to provide links to online gambling web sites. *Id*. The court further notes that the term "station" can mean, among other things, "a stopping place." Merriam-Webster's Collegiate Dictionary 1145 (10th ed. 2001).

1  Thus, Fujisaki's use of the allegedly infringing domain names may be merely a description of his
2  web sites as a stopping place for online gambling rather than the identification of the provider of
3  goods and services.  Although both parties offer related services and use the internet as a
4  marketing channel, the record presently before the court fails to show a likelihood of confusion.
5  Therefore, the court finds that Station Casinos has failed to show probable success on the merits.
6  The court further finds that Station Casinos has not demonstrated that the balance of hardships
7  weighs in favor of granting a temporary restraining order.
8      IT IS THEREFORE ORDERED that Station Casinos' Application for Temporary
9  Restraining Order (#3) and Motion for Preliminary Injunction (# 4) are hereby DENIED.
10     IT IS SO ORDERED.
11     DATED this 8th day of December, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

6